IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DALE E. GUILFOIL,

    Petitioner,

v.              Civil Action No. 16-291-CFC

ROBERT MAY, Warden, and
ATTORNEY GENERAL OF THE
STATE OF DELAWARE,

    Respondents.[1]

---

Dale E. Guilfoil. *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

## MEMORANDUM OPINION[2]

March 1, 2019
Wilmington, Delaware

---

[1]Warden Robert May replaced former warden G.R. Johnson, an original party to the case. *See* Fed. R. Civ. P. 25(d).

[2]This case was originally assigned to the Honorable Gregory M. Sleet, and was re-assigned to the undersigned's docket on September 20, 2018.

CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner Dale E. Guilfoil's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"), which he filed while incarcerated at the Sussex Correctional Institution.[3] (D.I. 3; D.I. 18) The State filed an Answer in opposition. (D.I. 23) For the reasons discussed, the Court will deny the Petition.

I.  **FACTUAL BACKGROUND**

As set forth by the Delaware Supreme Court in Petitioner's direct appeal, the facts leading to his arrest and conviction are as follows:

> On July 6, 2014, Maria Egger ("Egger") hosted a yard sale at her home in Hartly, Delaware. At the conclusion of the sale, Egger observed a white truck in her driveway. [Petitioner] was in the driver's seat "pressing on the gas" and revving the engine while a female companion of his was "in front of the truck trying to push it." After unsuccessfully attempting to persuade [Petitioner] to stop pressing on the gas and his female companion to step away from the vehicle, Egger backed her car into another part of the driveway and called the police.
>
> Detective Michael Weinstein ("Detective Weinstein"), then a member of the Delaware State Police Patrol Division at Troop 3 ("Troop 3"), responded to the call. When Detective Weinstein approached the truck, he observed "several open beer cans inside the vehicle." Detective Weinstein stated to [Petitioner]: "You've been drinking today." [Petitioner], who had "bloodshot, glassy eyes," admitted that he had been. [Petitioner] also admitted that he had been driving. Further, Detective Weinstein testified that, when [Petitioner] exited the truck, he had difficulty maintaining his balance, slurred

---

[3] It appears that Petitioner is no longer physically incarcerated in a Delaware state prison. However, he satisfies the custody requirement of § 2254(a) because he is serving the probation portion of his sentence. *See Anderson v. Williams*, 2005 WL 736677, at *3 n.1 (D. Del. Mar. 31, 2005); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

speech, a strong odor of alcohol emanating from his person, and had urinated in his pants.

Detective Weinstein performed an HGN[4] field sobriety test on [Petitioner], who was unable to maintain his balance during the administration of the test and had to lean on his vehicle. Detective Weinstein testified that he "observed six clues" of impairment when performing the test, and stated that "[a]nything more than four clues indicates that there is a 77 percent likelihood that the defendant's blood alcohol content is greater than .10."

On July 6, 2014, after performing the HGN field sobriety test, Detective Weinstein transported [Petitioner] to Troop 3 to obtain a blood sample. Detective Weinstein observed Hal Blades ("Blades"), a phlebotomist, obtain the sample. On July 16, 2014, the sample was transferred from Troop 3 to the Delaware State Police Crime Laboratory by James Daneshgar ("Daneshgar"). The analysis performed on the blood sample revealed that [Petitioner] had a BAC of 0.19.

Shortly before trial, the State informed defense counsel that Daneshgar was subject to discipline by his employer, the Office of the Chief Medical Examiner ("OCME"), for recreational drug use. Defense counsel requested that the prosecution produce Daneshgar to testify regarding his handling of [Petitioner's] blood sample. Before trial, [Petitioner] made an oral motion *in limine* to exclude the analysis of his blood sample, arguing that the State made untimely and incomplete disclosures with respect to Daneshgar in violation of *Brady*. Further, [Petitioner] argued that evidence relating to his blood sample was inadmissible because the State failed to produce a necessary witness under 21 *Del. C.* § 4177. The Superior Court denied [Petitioner's] motion *in limine* with respect to the alleged *Brady* violation, reasoning that the State disclosed the OCME's discipline of Daneshgar in writing before trial, that the jury would be able to consider the information, that any delay by the State in providing the information was inadvertent, and that the defense had "adequate time to use such information at trial...." Nonetheless, the court ordered the State to provide defense counsel with Daneshgar's address, enabling the defense to subpoena Daneshgar.

---

[4]"HGN" is the acronym for the Horizontal Gaze Nystagmus field sobriety test.

*Guilfoil v. State*, 135 A.3d 78 (Table), 2016 WL 943760, at *1-2 (Del. Mar. 11, 2016).

In June 2015, a Delaware Superior Court jury convicted Petitioner of a seventh offense of driving while under the influence. *See Guilfoil*, 2016 WL 943760, at *1. The Superior Court sentenced him to fifteen years at Level V incarceration, suspended after six years, followed by one year at Level III. *Id.* at Petitioner appealed, and the Delaware Supreme Court affirmed his conviction and sentence on March 11, 2016. (D.I. 23 at 2); *see also Guilfoil*, 2016 WL 943760, at *7.

On April 20, 2016, Petitioner filed a federal habeas Petition containing six Claims for relief. (D.I. 3) Claim Six asserted three instances of alleged official misconduct, one of which constituted an ineffective assistance of counsel argument that defense counsel failed to have a mechanic inspect the truck transmission. (D.I. 3 at 16) In response, the State filed a Motion to Dismiss the Petition without prejudice, because Petitioner still had the ability to exhaust his unexhausted ineffective assistance of counsel claim in state court. (D.I. 10) The Court provided Petitioner with an opportunity to delete his unexhausted claim in order to continue with the proceeding, which Petitioner chose to do. (D.I. 18) Therefore, the Petition presently before the Court asserts six Claims for relief, absent the ineffective assistance allegation in Claim Six concerning defense counsel's failure to have a mechanic inspect the truck's transmission.

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to

3

further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on federal habeas review, and federal courts cannot re-examine state court determinations of state law issues. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[s]tate courts are the ultimate expositors of state law"); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that claims based on errors of state law are not cognizable on habeas review). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or

4

>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). A federal legal claim is "fairly presented" to state courts when there is: (1) reliance in the state courts on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *See McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1996).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal

court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless*, 172 F.3d at 260; *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[5] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. See Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

## C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); see also Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C.

---

[5]Murray, 477 U.S. at 496.

7

§ 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Petitioner's timely-filed Petition asserts the following six grounds for relief: (1) the "trial court abused its discretion and erred as a matter of law" by allowing the State to introduce evidence of the blood analysis test results without establishing the chain of custody (D.I. 3 at 5); (2) the trial court "abused its discretion by admitting [e]vidence of Horizontal Gaze Nystagmus testing" (D.I. 3, at 8); (3) the "trial court abused its

8

discretion by barring defense counsel from [arguing during closing argument] a reasonable inference based on [the] evidence" (D.I. 3, at 9); (4) the "trial court erred as a matter of law in instructing the [j]ury on the definitions of operating and operability of a motor vehicle" (D.I. 3, at 11); (5) the trial court "docket will show how many times the petitioner's court hearing[s] were rescheduled because petitioner would not take a plea bargain" (D.I. 3 at 16); and (6) State employees, including the prosecutor, defense counsel, and the arresting officer, lied in various ways. (D.I. 3 at 16)

### A. Claim One: Failure to Establish Chain of Custody for Blood Analysis

In Claim One, Petitioner contends that the trial court erred by allowing the State to introduce evidence of the blood analysis test results without establishing a chain of custody. According to Petitioner, the evidence relating to his blood sample was inadmissible because Daneshgar, the courier from the OCME who transported the blood sample from Troop 3 to the to the Delaware State Police Crime Laboratory, did not testify at trial to establish a chain of custody.

The United States Supreme Court has repeatedly stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle*, 502 U.S. at 68. Thus, to the extent Claim One challenges the trial court's interpretation and application of Delaware chain of custody law, it asserts an issue of state law that is not cognizable on federal habeas review.

However, Petitioner's argument that introducing the blood analysis test results without requiring Daneshgar to testify at trial violated his rights under the Confrontation Clause does present an issue cognizable on federal habeas review. Since Petitioner

9

presented this Confrontation Clause argument to the Delaware Supreme Court on direct appeal, Claim One will only warrant relief if the Delaware Supreme Court's denial of the Claim was either contrary to, or an unreasonable application of, clearly established federal law.

The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the . . . right to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 US. 36 (2004), and its progeny, the United States Supreme Court held that the Confrontation Clause bars the admission of testimonial statements of witnesses absent from trial that are admitted to establish the truth of the matter asserted in the statement, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford*, 541 US. at 59, 60 n. 9 (2004); *see also Davis v. Washington*, 547 U.S. 813, 823-24 (2006). A testimonial statement is a statement that is made during non-emergency circumstances and which the declarant would objectively foresee might be used in the investigation or prosecution of a crime. *See United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005); *Davis*, 547 U.S. at 822. The threshold question in every Confrontation Clause case is whether the challenged statement is testimonial and, if so, whether it was introduced to establish the truth of the matter asserted. *See Hinton*, 423 F.3d at 357. If the statement is not testimonial in nature, then the Confrontation Clause has no application. Notably, a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, qualifies as "testimonial" for Confrontation Clause purposes. *See Melendez-Diaz v. Massachusetts*,

557 U.S. 305, 311 (2009). As such, it is impermissible to have a substitute scientist testify about a lab report involving test analysis if that scientist did not perform the test personally, unless the scientist who conducted the test is unavailable at trial and the accused had a prior opportunity to cross-examine that scientist. *See Bullcoming v. Mexico*, 564 U.S. 647, 652 (2011).

Here, the Delaware Supreme Court's denial of Petitioner's Confrontation Clause claim was not contrary to clearly established federal law, because the Delaware Supreme Court cited and applied *Crawford* in reaching its decision. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court also concludes that the Delaware Supreme Court's decision involved a reasonable application of *Crawford* and its progeny. When affirming Petitioner's conviction, the Delaware Supreme Court explained that

> [Petitioner] argues that his right of confrontation, as provided by the Sixth Amendment to the United States Constitution, was denied because Daneshgar [the testing chemist] was not required to appear at trial. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" In *Crawford v. Washington,* the United States Supreme Court held that the Confrontation Clause ensures a defendant's right to confront all those who bear testimony against him. We have recognized "that not every individual who may have relevant testimony for the purpose of establishing chain of custody must appear in person as part of the prosecution's case." That is, "not everyone who 'laid hands' on the evidence need testify to satisfy the Confrontation Clause." Accordingly, we find [Petitioner's] claim to be unpersuasive for three reasons. *First,* Daneshgar

11

> did not provide testimonial statements against [Petitioner] that were admitted in his absence at trial. *Second,* the Confrontation Clause "does not require each and every individual who possessed the evidence to provide live testimony in order to establish chain of custody." *Third,* as discussed above, Daneshgar's testimony was not necessary for the State to authenticate the blood test results and eliminate the possibility of misidentification or adulteration as a matter of reasonable probability.

*Guilfoil,* 2016 WL 943760, at *4.

Significantly, Daneshgar did not perform any forensic test on the blood sample, did not author the report concerning the results of the blood test, and did not provide any affidavits or statements that were used against Petitioner during the trial. His role in Petitioner's case was limited to that of a courier who transported Petitioner's blood sample from the police station to the crime lab. Notably, forensic chemist Whitney Smith analyzed the blood sample, drafted the Blood Alcohol Report and Certificate of Analysis that was admitted at trial, and testified about the testing procedure and test results during the trial. (D.I. 3-2 at 9; D.I. 14-6 at 14) For these reasons, the Court concludes that the Delaware Supreme Court did not unreasonably determine the facts or unreasonably apply *Crawford* and its progeny when it opined that Daneshgar did not provide testimonial statements against Petitioner. Since Daneshgar did not provide testimonial statements against Petitioner, the Confrontation Clause was not implicated. Thus, the Delaware Supreme Court's rejection of the instant Confrontation Clause claim does not warrant habeas relief under § 2254(d).

## B. Claim Two: Trial Court Erred in Admitting Evidence of HGN Testing

As a general rule, the "admissibility of evidence is a state law issue,"[6] and state evidentiary errors are not cognizable in a federal habeas corpus proceeding unless the error deprived the petitioner of fundamental fairness in his criminal trial. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974). An error of state evidentiary law deprives a petitioner of fundamental fairness "if the probative value of evidence, although relevant, was greatly outweighed by the prejudice to the accused from its admission." *Albrecht v. Horn*, 485 F.3d 103, 122 n.6 (3d Cir. 2007). Notably, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause,"[7] and "if a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995).

In Claim Two, Petitioner contends that the Superior Court abused its discretion by admitting Detective Weinstein's testimony regarding the results of Petitioner's HGN field sobriety test because the State did not present a proper evidentiary foundation for such testimony under Delaware Rule of Evidence 702. Petitioner's presentation of Claim Two in this proceeding does not reference or bring to mind federal constitutional principles or caselaw. In turn, Petitioner presented the argument in Claim Two to the Delaware Supreme Court on direct appeal as an issue of Delaware evidentiary law, without any reference to federal constitutional principles or caselaw, and the Delaware

---

[6]*Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008).

[7]*Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997).

13

Supreme Court relied entirely on Delaware law when denying the Claim. For these reasons, the Court will deny Claim Two for failing to assert an issue cognizable on federal habeas review.

### C. Claim Three: Trial Court Abused Its Discretion By Limiting Defense Counsel's Closing Argument

Next, Petitioner contends that the trial court improperly limited defense counsel's closing argument by precluding counsel from arguing that Petitioner's truck had a broken transmission. On direct appeal, the Delaware Supreme Court affirmed Petitioner's conviction after holding that any limitation on defense counsel's closing argument did not prejudice Petitioner. Given these circumstances, Claim Three will only warrant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

In *Herring v. New York*, 422 U.S. 853 (1975), the Supreme Court held that a "closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial." *Id.* at 858. Consequently, a trial court that completely refuses to allow defense counsel to make a closing argument violates a defendant's constitutional rights to counsel and to present a defense. *Id.* at 858, 862-3. Nevertheless,

> [t]his is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. He may ensure that argument does not stray unduly from the mark, or otherwise impeded the fair and

>orderly conduct of the trial. In all these respects he must
>have broad discretion.

*Herring*, 422 U.S. at 862.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court did not reference federal law when denying Claim Three. Nevertheless, the Delaware Supreme Court's decision was not contrary to clearly established federal law, because the Delaware cases cited therein articulate the applicable precedent.[8] *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir.2008) (Pennsylvania Supreme Court's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams,* 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

Moreover, having reviewed the record, the Court concludes that the Delaware Supreme Court's denial of Claim Three did not involve an unreasonable application of clearly established federal law under § 2254(d)(1). During closing argument, defense counsel argued: "The transmission is one of the key aspects of the mechanical system of a vehicle. It enables it to go into gear, to move, and it was broken. And with the transmission being broken --- [.]" At this juncture, the State objected, arguing that Petitioner had not offered expert testimony as to how the truck became inoperable.

---

[8]The Delaware Supreme Court cited *Anderson v. State*, 930 A.2d 898, 904 (Del. 2007), which articulates the principle in *Herring* that a trial judge is responsible for prohibiting counsel from raising questionable legal arguments.

15

Defense counsel argued that an expert opinion was not needed because the broken transmission remark was a reasonable inference from the evidence. The trial court sustained the State's objection with respect to the specifics about the transmission, but permitted Petitioner to argue that the truck was inoperable and that he was unable to drive anywhere.

As the Delaware Supreme Court noted on direct appeal, the trial court permitted defense counsel to present the general argument that the truck was inoperable and was not within Petitioner's physical control, and that Petitioner was "stranded" and "unable to drive anywhere." Defense counsel was only restricted from arguing that a broken transmission was the cause of the truck's inoperability. Given this record, the Court concludes that the Delaware Supreme Court's denial of Claim Three did not involve an unreasonable application of clearly established federal law.

### D. Claim Four: Improper Jury Instruction

In Claim Four, Petitioner contends that the Delaware trial court erred as a matter of law by denying his requested jury instructions for the "definitions of operating and operability of a motor vehicle." (D.I. 3 at 10) The Court liberally construes the Claim as asserting the same argument Petitioner presented on direct appeal, namely, that the trial court erred by not instructing the jury that "an inoperable vehicle cannot be physically controlled, or how to analyze inoperability, despite the fact that both operability and inoperability must be analyzed in considering an allegation of operation or actual physical control of a vehicle." *Guilfoil*, 2016 WL 943760, at *5.

16

Petitioner's presentation of Claim Four in this proceeding does not reference or bring to mind any federal constitutional principles or caselaw. In turn, Petitioner presented the argument in Claim Four to the Delaware Supreme Court on direct appeal as an issue of Delaware law, without any reference to federal constitutional principles or caselaw, and the Delaware Supreme Court relied entirely on Delaware law when denying the Claim. For these reasons, the Court will deny Claim Four for failing to assert an issue cognizable on federal habeas review.

### E. Claims Five and Six: Procedurally Barred

In Claim Five, Petitioner asserts that the trial court "docket will show how many times [his] court hearing[s] were rescheduled because [he] would not take a plea bargain." (D.I. 3 at 16) Claim Six asserts that State employees engaged in misconduct during his trial, and that the prosecutor, defense counsel, and arresting officer told various lies. (D.I. 3 at 16) The record reveals that Petitioner did not present Claims Five and Six to the Delaware Supreme Court on direct appeal. At this juncture, any attempt by Petitioner to raise Claims Five and Six in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as procedurally defaulted under Rule 61(i)(3). See Del. Super. Ct. Crim. R. 61(i)(1), (3). As a result, the Court must treat Claims Five and Six as technically exhausted but procedurally defaulted, which means that the Court cannot review the merits of the Claims absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner does not assert, and the Court cannot discern, any cause for his procedural default. To the extent Petitioner's statement that defense counsel lied to him should be construed as an attempt to assert ineffective assistance of counsel as the cause for his default, it is unavailing. Petitioner never presented an ineffective assistance of counsel claim based on counsel's alleged lies in a Rule 61 proceeding. Consequently, this ineffective assistance of counsel allegation is itself procedurally defaulted, see Del. Super. Ct. Crim. Rule 61(i)(2), and cannot excuse Petitioner's procedural default of the other allegations in Claims Five and Six. See Edwards v. Carpenter, 529 U.S. 446, 453-54 (2000).

Given Petitioner's failure to establish cause, the Court will not address the issue of prejudice. The miscarriage of justice exception to the procedural default doctrine also does not excuse Petitioner's default, because he has not alleged any facts or provided new reliable evidence to establish his actual innocence. Accordingly, the Court will deny Claims Five and Six as procedurally barred from habeas review.

### F. Pending Motions

Petitioner filed the following three Motions during the pendency of this proceeding: (1) Motion to Strike Information from State Court Records (D.I. 26); (2) Motion for Unsecure Bail Pending Resolution of Habeas Proceeding (D.I. 27); and (3) Emergency Request to Stay Probation and Fines (D.I. 31). Having already concluded that the instant Petition does not warrant relief, the Court will deny these three Motions as moot.

## IV. CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability may be issued only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, the Court concludes that the Petition must be denied. Reasonable jurists would not find this Court's assessment of Petitioner's constitutional claims to be debatable or wrong. Consequently, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## V. CONCLUSION

For the foregoing reasons, the Court will deny the instant Petition. An appropriate Order will be entered.